UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>     v. <br> TRAVIS SHANE BARNES, <br>     Defendant. | **NO. CR-15-2061-LRS-1** <br> **MEMORANDUM OPINION** |

During the course of the jury trial, the court granted the Government's Motion In Limine (ECF No. 88) to preclude Defendant from offering any evidence regarding a justification defense. Defendant did not offer as a jury instruction the Ninth Circuit's model instruction on justification (6.7), but rather the model instruction on the specific defense of "necessity" (6.6). On the record in open court, the court provided its reasoning for not allowing Defendant to offer evidence regarding a "necessity" defense and for not instructing the jury as to that defense. In this memorandum opinion, the court elaborates on the basis for finding that Defendant's offer of proof failed to make a *prima facie* showing of all of the elements of a "necessity" defense so as to allow the jury to consider that defense. A defendant is not entitled to submit the defense of "necessity" to the jury unless the proffered evidence, construed most favorably to the defendant, establishes all the elements of the defense. *United States v. Cervantes-Flores*, 421 F.3d 825, 829 (9th Cir. 2005).

///

**MEMORANDUM OPINION-**       1

Defendant asserts he discovered a firearm in the residence at 810 N. 26th Ave. which he needed and intended to dispose of to prevent it from coming into the hands of children and/or into the hands of adults under the influence of drugs who were present in the downstairs laundry room where the firearm was discovered. The second element of a "necessity" defense is that "the defendant acted to prevent imminent harm." This court concludes that Defendant did not proffer evidence sufficient to establish this element.

In *U.S. v. White*, 552 F.3d 240 (2nd Cir. 2009), the Second Circuit affirmed a district court's decision to not give a "necessity" instruction to the jury. In that case, the defendant testified he picked up a firearm and carried it into a bedroom (from a living room) in order to ensure that another individual's seven year old son did not obtain possession of it and come to harm. The question therefore was "whether a loaded shotgun lying on the living room floor created such an imminent danger to [the] seven-year-old . . . that [defendant] was justified in taking possession of the gun and unloading it in another room." *Id*. at 247-48. The Second Circuit noted that "[t]hose decisions that have required a jury instruction as to justification have almost uniformly done so in circumstances where the defendant presented evidence suggesting that he took possession of a weapon when confronted with **an immediate, compelling, and direct threat to human life**." *Id*. at 248. (Emphasis added).[1] The circuit found that the threat of harm to the seven year old was "considerably more attenuated and speculative in nature." *Id*. According to the defendant's testimony, the boy was in another room. *Id*. Furthermore, there was "nothing in the record indicating the child had

---

[1] It is immaterial whether an affirmative defense to 18 U.S.C. §922(g)(1) is termed "justification," "necessity," "duress," or "self-defense." The broader term of "justification" will usually encompass all of these defenses. *U.S. v. Beasley*, 346 F.3d 930, 834 (9th Cir. 2003).

**MEMORANDUM OPINION-**     2

expressed an intention to handle the shotgun or that, having pleaded with his mother to put the gun down, he would after her departure attempt to pick it up and play with it." *Id*. As such, the defendant's testimony suggested "he acted to prevent a cognizable, but not imminent, risk to human life." *Id*.

It is acknowledged that these specific circumstances are not identical to the facts proffered by Defendant in the case at bar. Nevertheless, this court concludes that the facts proffered by Defendant also, at best, show that Defendant may have acted to prevent a cognizable, but not an "immediate, compelling, and direct theat to human life" to the woman and the children he says he saw in the laundry room when he discovered the firearm.

In any event, Defendant also did not proffer sufficient evidence in support of the fourth element of the "necessity" defense- that "there were no other legal alternatives to violating the law." According to Defendant's proffer, almost immediately after leaving the residence to dispose of the firearm, he was accosted by police. Defendant, however, had legal alternatives available to him which did not require him to leave the residence. While there was testimony from Defendant at the suppression hearing that he did not own a cell phone (ECF No. 49 at p. 50 and p. 58), no evidence was presented that there was not a land line phone in the residence at 810 N. 26th Ave, which the Defendant could have used to call the police or some other non-felon adult to report the circumstances regarding the firearm.[2] Furthermore, before making such a call, or even in lieu of making such a call, the Defendant could have put the firearm somewhere else in the residence which was inaccessible to children or, for that matter, to any adults under the

---

[2] Defendant suggests that summoning the police would have been problematic because then he would have been labeled a "snitch." Difficult choices emanate from federal firearms laws, however, and this is one of the burdens of a felony conviction. *U.S. v. Butler*, 485 F.3d 569, 577 (10th Cir. 2007).

**MEMORANDUM OPINION-    3**

influence of drugs. Indeed, to further diminish the risk, Defendant could have unloaded the ammunition from the firearm and placed it in a separate location (separate from the firearm) which was inaccessible to children and others.[3]

In *U.S. v. Kilgore*, 591 F.3d 890 (7th Cir. 2010), the defendant and his brother were present in an apartment with several people, including children. The brother, who was drunk, accidentally shot himself in the leg, after which the defendant took the gun and kept it "within his sight or in his actual possession for at least an hour." *Id*. at 892. During that time, the defendant attempted to persuade his brother to go the hospital and made a number of calls to people with medical experience who might be able to help. Eventually, the brother agreed to go the hospital. The defendant carried the gun out of the apartment and the gun ended up in a snowbank where it was discovered later by citizen who called the police. The district court found the defendant was not entitled to raise a justification defense at trial and the Seventh Circuit agreed. According to the Seventh Circuit:

> The district court aptly outlined a range of legal avenues that were open to Kilgore. [Citation omitted]. After taking the gun off his brother, he could have called the police. He could have given the firearm to a non-felon adult. **He could have put the revolver somewhere in the apartment that the children could not have reached**. [Citation omitted]. Having eschewed these options, Kilgore cannot appeal to the defense of necessity.

*Id*. at 894 (emphasis added). The circuit added:

///

---

[3] Defendant seemingly takes the position that any handling of the firearm would have amounted to "possession" and not constituted a "legal" alternative. This is not so case as the cases cited herein indicate. And even if Defendant had undertaken these activities and they had resulted in him being charged with felon in possession of firearm, they would make for a much more compelling case of "necessity," which is a "legal excuse."

**MEMORANDUM OPINION-      4**

> One might well imagine the scene to be chaotic after an accidental shooting in an apartment filled with children. But even if Kilgore's portrayal is accurate, he does not direct us to any case law that suggests that the defense of necessity is available, notwithstanding the lack of objective justification, when a defendant makes a mistaken good-faith judgment in the midst of a highly charged situation. Putting aside our skepticism over Kilgore's purported good faith in possessing the gun, the relevant case law make clear that such subjectivity is largely irrelevant. [Citation omitted].

*Id*.

In *White*, discussed *supra*, the Second Circuit observed that even if an imminent threat existed, the defendant would perhaps have been justified in carrying the gun into the bedroom and, "for example, putting it on a high closet shelf, locking the door to the room, or otherwise placing the gun outside of the reach of a seven-year-old child." 552 F.3d at 248. But he did not do that and "his testimony failed to show that he maintained possession of the shotgun only for as long as necessary to dispel any threat." *Id*.

In *U.S. v. Williams*, 389 F.3d 402 (2nd Cir. 2004), the defendant sought a pretrial ruling permitting him to raise the defense of necessity. According to the defendant, he took a revolver from a friend's cousin, a 15 year old black male, after hearing two gunshots. Defendant stated he took the gun because he did not want this kid to get into trouble and in order to get the gun off the street. Defendant stated he was heading to an incinerator to deposit the gun when he was stopped by the police. He dropped the gun and fled, but was subsequently apprehended. The Second Circuit found the district court correctly held the defendant did not present evidence sufficient to sustain a "necessity" defense:

> Defendant agrees- as he did before the District Court- that one of the several prerequisites for the necessity defense is that the crime be committed "under unlawful and present threat of death or serious bodily injury." [Citations omitted]. The District Court, however, found that, even if such an unlawful and present threat existed "when the defendant first took the gun, it was no longer true when he fled from police.

**MEMORANDUM OPINION-         5**

[Citation omitted]. This finding is not error, much less clear error. [Citations omitted].[4]

*Id*. at 405.

Here too, even if there was an imminent risk to human life when Defendant Barnes first took the gun, that was no longer true when he was stopped by the police and informed there was a warrant for his arrest. Instead of apprising the police he had a gun in his possession and the alleged "necessity" for that, he fled. Subsequent to his apprehension, Defendant still did not offer an explanation to police for why he had a loaded weapon in his possession.

Defendant claims he fled because the police informed him he had a DOC felony warrant for his arrest when he in fact knew there was not such a warrant.[5] This was not a sufficient basis for either fleeing from police or failing to advise that he had a weapon in his possession and promptly surrendering it to police. See *U.S. v. Butler*, 485 F.3d 569, 577 (10th Cir. 2007)("Butler's experiences may well have led him to be hesitant in trusting law enforcement to keep him and his family safe, but such distrust does not eliminate prompt relinquishment of the gun and disclosure of the circumstances to the police as a reasonable legal alternative. Without substantial and compelling proof, as in [*United States v.*] *Gomez* [92 F.3d 770 (9th Cir. 1996)], distrust of officials is much too convenient as a *post hoc* rationalization for illegal possession").

///

In sum, Defendant Barnes was not confronted with an immediate, compelling, and direct threat to human life which required him to take possession

---

[4] One of the omitted citations is *United States v. Beasley*, 346 F.3d 930, 935-36 (9th Cir. 2003).

[5] There was, however, an outstanding misdemeanor warrant for his arrest issued by the Yakima Municipal Court. This court has found that warrant was valid and provided the police with probable cause to arrest Defendant.

**MEMORANDUM OPINION-      6**

of the firearm. Even assuming he was confronted with such a threat, he had reasonable legal alternatives to violating the law. Finally, any such threat no longer existed when Defendant was confronted by police, yet he did not promptly relinquish the firearm and disclose the alleged circumstances for why he had it in his possession. Accordingly, Defendant was not entitled to present a "necessity" defense to the jury.

    **DATED** this __25th__ day of May, 2016.

                  *s/Lonny R. Suko*
                    LONNY R. SUKO
              Senior United States District Judge